**Pueblo De SAN FELIPE,**
**Plaintiff-Appellant,**

v.

**Donald P. HODEL, Secretary of the**
**Interior, Defendant-Appellee,**

**and**

**Pueblo of Santa Ana,**
**Defendant-in-Intervention-Appellee.**

**No. 83–1140.**

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1985.

Donald M. Salazar (Richard M. Daly, on brief) of Sutin, Thayer & Browne, Santa Fe, N.M., for plaintiff-appellant.

Blake A. Watson, Dept. of Justice, Washington, D.C. (with him on the brief, Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., William L. Lutz, U.S. Atty., and Herbert A. Becker, Asst. U.S. Atty., Albuquerque, N.M., and Martin W. Matzen, Dept. of Justice, Washington, D.C.), for defendant-appellee.

Richard W. Hughes of Luebben, Hughes & Kelly, Albuquerque, N.M., for defendant-in-intervention-appellee.

Before McKAY, McWILLIAMS and DOYLE, Circuit Judges.

McKAY, Circuit Judge.

In 1978 and 1979 the San Felipe Pueblo negotiated a right-of-way agreement with the New Mexico State Highway Department for the purpose of making improvements to Interstate Highway 25. A portion of the negotiated right-of-way crossed land that is claimed by both the San Felipe Pueblo and the Pueblo of Santa Ana. This contested parcel is referred to as the overlap area. The right-of-way agreement was forwarded to the Superintendent of the Southern Pueblo's Agency of the Bureau of Indian Affairs, who was asked to grant New Mexico a right-of-way in accordance with the right-of-way agreement. Because of the conflicting claims to the overlap area, it was decided that the decision to grant the right-of-way would be referred to the Secretary of the Interior himself.

Upon consideration of the problem, the Secretary decided to grant the easement subject to the condition that the portion of the compensation attributable to the overlap area would be placed in escrow pending resolution of the conflicting claims to ownership. The grant was made, the escrow was established, and San Felipe Pueblo accepted the remaining portion of the compensation. The highway construction then went forward without objection by San Felipe.

San Felipe brought this action in the district court claiming that it was entitled to disbursement of the escrowed funds because it never consented to the escrow condition and because the grant of the easement covered only its interest in the overlap area and did not grant any interest that may have been held by Santa Ana Pueblo in the overlap area.

After trial to the court, the district court ruled that the Secretary's grant of a right-of-way over the overlap area to the State of New Mexico covered both San Felipe's interest and whatever interest may be held by Santa Ana in the disputed property. The court also ruled that San Felipe's consent was not necessary to the imposition of the escrow condition and that to the extent consent may have been necessary the requirement of consent was waived by the Secretary pursuant to applicable regulations. The district court therefore ruled that the grant was valid and the escrow provision was within the Secretary's discretion.

Given the particular facts of this case, San Felipe's consent to the escrow condition was not required and the Secretary's grant covered all interests held by the United States as trustee for any of the Indian

tribes that may have an interest in the overlap area.

It is apparent that the Secretary intended to convey to the State of New Mexico a right-of-way over the overlap area, and not merely a quitclaim of San Felipe's interest to the overlap area. Had the Secretary intended to convey only whatever interests San Felipe has in the overlap area, there would have been no need for the escrow arrangement. Santa Ana's interest in the property would not have been impaired. The fact that the Secretary established the escrow condition is conclusive that he understood the grant to affect the interest of whatever Indian tribe is ultimately determined the owner of the property.[1] Thus the district court correctly determined that the right-of-way grant affected not only San Felipe's interest but Santa Ana's as well.

With respect to the consent issue, it is important to note that neither Santa Ana nor San Felipe object to the right-of-way itself. Santa Ana made it clear at the trial and in its brief that it does not object to the right-of-way so long as its interests are protected through the escrow condition.[2] San Felipe also makes clear in its brief that it does not desire to revoke the right-of-way agreement but merely seeks to dissolve the escrow agreement and obtain possession of the proceeds. Were the Pueblos objecting to the right-of-way itself, this would be a different case, but where each of the parties wants the right-of-way, we agree with the trial court that the Secretary's fiduciary duty to each of the Pueblos made imposition of the escrow condition clearly within the Secretary's discretion. Section 325 provides that "the compensation received on behalf of the Indian owner

shall be disposed of under rules and regulations to be prescribed by the Secretary of the Interior." 25 U.S.C. § 325 (1982). Thus the applicable statutes give the Secretary discretion to distribute the proceeds from this right-of-way in an equitable and just manner among the competing parties.

By this opinion we do not suggest that in all situations the Secretary may impose conditions upon the granting of a right-of-way without the consent of the concerned Indian tribes. We merely hold that where, as here, there is a dispute over which tribe owns the land in question, the Secretary has not only the right but the fiduciary duty to condition the grant of the right-of-way to which both tribes consent upon some just condition by which the appropriate recipient of the proceeds can be protected. The decision of the district court is therefore affirmed.

---

1. In his deposition, the Secretary testified:

    Q (By Mr. Daly) Governor, if you had been informed that no interest of Santa Ana Pueblo was to be conveyed by the right-of-way and the interest of the San Felipe was to be conveyed by the right-of-way, would you still have impounded the $189,200?

    A There would have been no reason to if only the interest of San Felipe were at stake. But it is clear that there was a discussion or an issue that this money was the money for the right-of-way and it was to be divided

among the winners of this argument as a court or other judicial finding which so designated.

Record, vol. 5, at 29–30.

2. While it is unclear whether Santa Ana gave its consent at the time the easement was granted, their position on appeal that they do not object to the granting of the right-of-way ratifies and validates whatever actions of the Secretary may have exceeded his authority to act without Santa Ana's consent.